# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4686-18T1

I.U.,[1]

     Plaintiff-Respondent,

v.

M.U.,

     Defendant-Appellant.

_____

Argued September 29, 2020 – Decided October 20, 2020

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1461-19.

Luretha M. Stribling argued the cause for appellant.

Richard A. Outhwaite argued the cause for respondent (Weinberger Divorce & Family Law Group, LLC, attorneys; Richard A. Outhwaite, on the brief).

---

[1] We use initials to refer to the parties to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(d)(9) and (10).

PER CURIAM

Defendant M.U. appeals from a May 21, 2019 final restraining order (FRO) entered in favor of plaintiff I.U. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The family part judge found defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4, and the FRO was necessary to protect plaintiff against future threats or acts of domestic violence. We affirm.

The facts are taken from the testimony of the parties and witnesses during the one-day trial conducted by the family part judge. The parties married in 2009 and have one child, born in 2014. In 2012, they purchased the marital home.

Since 2018, plaintiff and defendant have been estranged. In 2018, defendant attended school and lived in Pennsylvania during the weekdays. Each week, defendant returned to the marital residence Friday, Saturday, and Sunday to spend time with his daughter.[2] On May 11, 2019, a Saturday, plaintiff went to the marital home with her sister,[3] and found defendant in an upstairs bedroom.

---

[2] In 2018, plaintiff and the child moved out of the marital home and lived with plaintiff's parents.

[3] The parties' child accompanied her mother as well.

A-4686-18T1

Defendant's mother was in the house at the time. When plaintiff asked defendant why he was in the house, defendant stated he would not answer any questions and would see plaintiff "in court." He also told plaintiff that "voodoo" would kill her and her family. Plaintiff and defendant then exchanged harsh words. After trading insults, plaintiff testified defendant lunged at her, strangled her, and attempted to push her down the stairs. Plaintiff's sister witnessed the events and corroborated plaintiff's testimony. Plaintiff's sister stated she called defendant's name in an effort to get him away from plaintiff.

At trial, plaintiff produced an audio recording from the day of the incident. On the recording, the judge clearly heard "someone saying, 'Let's go, let's go, let's go' and 'M., M., M., M.'"[4] Both plaintiff and her sister told the judge that the voice on the recording belonged to plaintiff's sister.

Defendant and his mother disputed plaintiff's version of the events of May 11, 2019. According to defendant, he did not threaten, choke, or push plaintiff that day. His mother also did not see her son assault, choke, or hit plaintiff that day.

As a result of the incident, plaintiff called the police and waited outside the house until the police arrived. Plaintiff explained what occurred and the

---

[4] On the audio recording, plaintiff's sister used defendant's first name.

police went inside the house to speak with defendant. The police then arrested defendant.

Plaintiff filed a criminal complaint against defendant and applied for a temporary restraining order (TRO). A TRO issued on May 11, 2019. An FRO hearing was held on May 21, 2019. Plaintiff was self-represented at the FRO hearing and defendant was represented by counsel. At trial, the family part judge heard testimony from plaintiff, plaintiff's sister, defendant, and defendant's mother.

After hearing the testimony and listening to the May 11, 2019 audio recording, the judge concluded defendant committed the predicate act of harassment.[5] The judge concluded defendant's harassment consisted of an offensive touching of plaintiff by attempting to strangle her and push her down the stairs, constituting "offensive touching or simply engaging in some type of conduct that was alarming or at least – seriously annoying" to plaintiff.

The judge then considered whether plaintiff required a restraining order against defendant. The judge reviewed the past incidents of domestic violence between the parties, including defendant choking plaintiff in 2014, striking

_____

[5] While plaintiff alleged both harassment and assault in her domestic violence complaint, the judge stated he need not address plaintiff's assault allegations after finding defendant's conduct constituted harassment under the PDVA.

4

plaintiff in 2015, threatening plaintiff with a knife in April 2015, and, in November 2015, turning on the gas from the stove while plaintiff and the child were home. He also noted plaintiff's testimony that she was fearful of defendant and afraid defendant might kill her as he previously threatened. Based on the evidence, the judge concluded plaintiff established she was "in some type of immediate danger" and entered the FRO.

On appeal, defendant contends the motion judge erred because there was insufficient evidence upon which to find he committed the predict act of harassment or the need for an FRO. We disagree.

In a domestic violence case, we owe substantial deference to a family judge's findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998). This is particularly true where the evidence is testimonial and implicates credibility determinations. Ibid. We will not overturn a judge's factual findings and legal conclusions unless we are "convinced that they are so manifestly unsupported by or insistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

When determining whether to grant an FRO under the PDVA, a judge must undertake a two-part analysis. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. Second, the judge must determine whether a restraining order is necessary to protect the plaintiff from future acts or threats of violence. Id. at 127.

Under the first prong, plaintiff alleged defendant committed the predicate act of harassment under the PDVA. A person is guilty of harassment where, "with the purpose to harass another," he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

Harassment requires the defendant to act with the purpose of harassing the victim. J.D. v. M.D.F., 207 N.J. 458, 486 (2011). A judge may use "[c]ommon

6

A-4686-18T1

sense and experience" when determining a defendant's intent. State v. Hoffman, 149 N.J. 564, 577 (1997).

Having reviewed the record, we are satisfied there was sufficient evidence supporting the judge's determination that defendant harassed plaintiff consistent with the PDVA. "Although a purpose to harass can be inferred from a history between the parties, that finding must be supported by some evidence that the [defendant's] conscious objective" was to serious annoy or alarm plaintiff to support a purpose to harass. J.D., 207 N.J. at 487 (citing Hoffman, 149 N.J. 577). Using his common sense and experience, the family part judge noted defendant's purpose to harass when defendant told plaintiff, in his native language, "voodoo" would kill plaintiff and her family, and attempted to push plaintiff down the stairs. The judge further explained he found plaintiff and her sister more credible than defendant and his mother concerning defendant's intentional conduct on May 11, 2019. He concluded the audio recording corroborated the testimony of plaintiff and her sister regarding the May 11 incident. On the other hand, the judge found "pretty serious contradictions" in the testimony offered by defendant and his mother. Specifically, defendant testified he never hit his mother. However, defendant's mother testified defendant had done so but claimed it was accidental.

Since this case turned almost exclusively on the testimony of the witnesses, we defer to the family part judge's credibility findings as he had the opportunity to listen to the witnesses and observe their demeanor.  Gnall v. Gnall, 222 N.J. 414, 428 (2015).  We discern no basis on this record to question the judge's credibility determinations.[6]

We next consider defendant's claim that the judge erred in finding plaintiff required an FRO to protect her from future acts or threats of domestic violence.  In determining whether a restraining order is necessary, the judge must evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6) and, applying those factors, decide whether an FRO is required "to protect the victim from an immediate danger or to prevent further abuse."  Silver, 387 N.J. Super. at 127.  Here, based on the

_____

[6] Defendant sought to supplement the record on appeal with a transcript of a municipal court judge's credibility findings related to his trial on the criminal charges.  In a June 11, 2019 order, the merits panel was accorded the "ultimate assessment as to whether the materials are relevant to the issues on appeal and appropriate to consider."  We determine the transcript of the municipal court proceeding is neither relevant nor material to the issues on appeal for the following reasons.  First, defendant was well-represented by counsel during the FRO hearing.  Defense counsel thoroughly cross-examined plaintiff and her sister and tested their credibility before the family part judge.  Second, the municipal court matter involved criminal charges against defendant and therefore the municipal court judge applied a different burden of proof when deciding the criminal matter.  Third, the municipal court prosecutor dismissed the harassment charge against defendant due to the lack of evidence.

credible testimony, the family judge found plaintiff was afraid of defendant and feared defendant would kill her.

We are satisfied the judge properly concluded the FRO was necessary to protect plaintiff from further abuse by defendant and there was sufficient evidence in the record to support the judge's findings under both <u>Silver</u> prongs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION